States v. Maxwell Justice David So Mr. Reuth I have a really uphill battle in  merry trial to convince us that 4B 1. 2A 1 does not apply here. Why this simple robbery statute, even though it does not have as an element the use, attempted use or threatened use of physical force against the person of another, since it seems to have exactly that element. Justice Breyer Well okay so that's the first thing I wanted to talk about because there really are, apart from the cases that we talk about in our brief, there are two Minnesota cases that came up in the appellee's brief that I think answer the question. One is, well first of all you have to understand in order to be forced for physical force, and it not only has to be just mere physical force, it has to be physical force capable of causing pain or injury. Justice O'Connor So the Minnesota statute is calling for force against any person to overcome the person's resistance or powers of resistance to or to compel acquiescence in. Why isn't that just a different way of phrasing the same thing? It's not just, you know, we poke somebody or Justice O'Connor Well except that it doesn't require, at first blush it doesn't require physical force. It just says force. So it can be any kind of force. It could be mental force. It could be, now I actually though, I'm backing down from that a little bit because of these cases, this state versus slaughter and state versus Stanafer suggests that it has to be some kind of physical force. But the level of physical force can be much, much less than what would cause pain or injury. And the state versus slaughter says that pushing or grabbing during a theft elevates a theft to simple robbery. So any level of pushing and any level of grabbing would include pushing or grabbing that doesn't cause pain or injury. Justice O'Connor Well in context, but it's got to be, I mean some of the person's resistance or powers of resistance, etc. And so I'm not sure every shove would, you know, but maybe some would. I could see that the Minnesota courts might consider the facts. Justice Breyer Well right, except that it doesn't have to cause pain or injury. It just has to overcome resistance. And actually the best case really to look at is state versus Stanafer. And this is another one. You really have to read the first blush. It sounds like it's bad for us because Stanafer said fifth degree assault is a lesser included of simple robbery. So when you first read that you think, wow, assault, assault sounds like something that would cause pain or injury. But then look at the definition of fifth degree assault. It only requires what they call bodily harm. And bodily harm includes pain, injury, that would be the career offender, pain, injury, illness, or impairment of condition, impairment of physical condition. So if I sneeze on you... Justice O'Connor What's the difference between impairment of physical condition and injury? Justice Breyer Well, like for example, if I were to provide you with an intoxicating substance, that would impair your physical condition, that would be bodily harm, that would be fifth degree assault. And if I gave you an intoxicating substance in that context and took your wallet, that would be simple robbery. But it wouldn't be a crime of violence. Now I think that's the best example because it's the most easiest example to understand because I think that's a plausible way to commit a robbery. A simple robbery, frankly, it's not that uncommon that people slip someone something and then commit a crime. Another example, though, is the illness one. If I sneeze on you and cause you to become ill, and then in the context of that, take your purse or wallet, again, I have committed fifth degree assault. Justice Scalia I don't like to say this, but that's the silliest thing I've heard in a long time. Justice Breyer It's an example. It is... Justice Scalia It may be an example, but it's a poor example and it's a silly example. Justice Breyer I like the other example better, the intoxicating beverage, but I guess I use the example of sneezing. There are multiple things that I could do that would cause an illness. Judge O'Connor But why is the intoxicating beverage the use of force against someone to overcome their resistance as opposed to luring them in some other way? I don't think giving somebody a drink is using force. Justice Breyer Well, here, drink it. I don't want to. No, drink it. That's force. Judge O'Connor I don't... Justice Breyer It's only physical force. Judge O'Connor That's a natural use of the term, using or threatening the imminent use of force to overcome resistance. Then you look at the aggregated version of robbery in Minnesota and it does seem that... I mean, your argument in your brief was the Minnesota statute would criminalize self-harm and we couldn't find any examples of that. Justice Breyer No, that's true, but that's something else. That's not the question of the element of force. That's the question of the element of any person versus another. Now, we couldn't find examples where we talked about self-harm, but the term any person and the term another are terms of art. When I say another, that means everyone in the world except me. The only other way to include me is to say any person. There are examples in the Minnesota statutes where they say any person. Judge O'Connor But you also have, at least the government points out, these advisory comments that indicate that any person was meant to cover the situation. X threatens to kill Y if Z doesn't hand over his wallet. So another person, they don't focus on X says, if you don't give me your wallet, I'm going to kill myself or something. Justice Breyer The examples don't address this particular fact pattern, but the elements... Judge O'Connor No examples do. I mean, you didn't show us a single case that has done this. Justice Breyer But that doesn't change that they worded the statute in a way because the case hasn't come along yet, baby. But they worded the statute and used a term of art that included me, the robber, along with everybody else in the world. And to me, why wouldn't you just say another? Judge O'Connor Because legislatures don't always pick quite the right word. But if the legislature tells you that they mean another when they say any person... Justice Breyer Well, they told us that as an example, one example is another, but they didn't tell us that it was intended to be limited to another. And I think they didn't tell us that in the clearest way when they said any person. I'm  Judge O'Connor All right, that's fine. Ms. Myron Good morning. Laura Myron for the United States. May it please the court. I'll start with the question of force at issue here. I think it's very clear on the face of the statute that it does require some level of force that is and I think... Judge O'Connor But the question is, does that equate, looking at the phrase in Johnson, and obviously the Supreme Court has told us to be careful about these things, is all physical force that can overcome your resistance automatically something that's going to cause physical pain or injury? That strikes me as a somewhat higher standard. Ms. Myron Well, I would note, Your Honor, that it's not that will cause physical pain or injury, but merely the kind of force that is capable of causing physical pain or injury. So I think that is a slightly lesser standard. Judge O'Connor So does a paper cut count? Ms. Myron Well, I don't think that would count as robbery under Minnesota law. And if you look at slaughter and the way that the court has, Minnesota Supreme Court has interpreted what would be sufficient to constitute robbery under Minnesota law, that that is anticipating some level of force that is slightly higher than perhaps the touching necessary to take the object from the victim. And they point to some scratches on the neck of the victim as evidence that the kind of force that is necessary to constitute robbery was used there. Judge O'Connor So what about the lack of the word physical in the Minnesota statute? I mean, we've had a number of cases where we've discussed the fact that psychological force can be very powerful. You know, there's a mother and there's her child and you say to her, you know, if you don't give me your purse, I'm going to hurt the child or I'm going to take your child away and you're not going to see him. Not in a way that's going to hurt the child, but it's going to deprive her of the child. That would be psychologically agonizing for the mother and yet seems to fall within the statute. Ms. Myron Well, I think it isn't necessarily how the Minnesota legislature and courts have understood the statute. I think if you look at the statutory scheme that they've laid out, that that kind of the coercion statute, which is kinds of force that do not amount to robbery, and so that kind of force would be included there. Judge O'Connor But you agree, though, that this Minnesota statute itself just says, you know, use, threat, et cetera, imminent use of force. It doesn't say physical. Mr. Laird I'm going to hit your child right square in the head. Judge O'Connor Yeah, that's right. That kind of force. Ms. Myron Well, I think that kind of force would fall. Mr. Laird I think that's force. That's force. Judge O'Connor It would be, but it would be physical force against the person of another, so it would be within the Minnesota robbery statute. Ms. Myron So that's physical force, but if all you say is, if you don't give me your purse, I'm going to put your kid in my car and drive off with him. Maybe he's a nice person otherwise, and it's not going to hurt your child, but that would be a type of force that a parent would recognize. Ms. Myron Certainly, Your Honor, but I don't think that that's the kind of force that the Minnesota Supreme Court has understood. Judge O'Connor The Minnesota courts also do not think so. Ms. Myron Yes, if you look at cases like slaughter, they reference physical force such as pushing or grabbing, and that is, I would note, the kind of force capable of causing pain or injury, so it does meet the Johnson standard, and the Curtis-Johnson standard is not force capable of causing serious bodily injury or force that actually results in harm. It's just force that's capable of causing some pain or injury, so I think it does meet that standard.  Look at the text of the statute, and as it's understood by the courts of Minnesota, and make the best estimate of what kinds of conduct are encompassed within the statute, and I think it's telling that defendant has not pointed to any cases that encompass this kind of conduct, and the Supreme Court has said under Duenas-Alvarez that we're looking for a realistic probability that the kind of conduct at issue would be encompassed within the statute, so certainly I don't think that those kinds of cases would be within the Minnesota statute, and I don't think that's necessary to find here that it has as an element the use or threatened use of physical force sufficient to satisfy 4B1.2. Okay, so let's talk for just a minute about A2, because there, especially in light of these impending changes to the guidelines, A2, at the moment, you know, for the next few months, has a very short list of specific crimes, burglary of a dwelling, arson, extortion, anything involving explosives. We all agree Minnesota's simple robbery is not any of those things. A2 is not prefaced by anything like the language that would say, among other things, these are offenses that are covered, and the fact that the commentary includes a much longer list of crimes could certainly be there. So you can see that the commission might have wanted to remove all doubt for a somewhat longer list, but I'm not sure that, as things presently stand, we can just expand A2 with the list of crimes in the committee notes. Yeah, well, to be clear, the defendant has not raised this argument, and it is pending before the court, as you noted in other cases, so certainly I'm happy to discuss it, but I did want to note those things at the outset, but I think if you look at cases like Ralph, it makes clear that the commentary crimes, the enumerated crimes in the commentary, are not, in fact, interpreting the residual clause. They're providing an alternate framework for determining what is and what is not a crime of violence, and I would give you three... But there's nothing, I mean, I went back and read, I mean, I've probably read it a million times, of 4b1.2, and I can't find any language that says crime of violence is a lot of things plus these two things, element, list. It just says a crime of violence for purposes of 4b1.1 is, you know, something that has as an element, or these things in the list, or actually now the stricken, you know, three residual clause. Well, I would point you to three things that I think make clear that the residual clause is not, in fact, interpreting the commentary, it's supplementing the commentary, so we take as a whole the text and commentary of 4b1.2 as the definition of a crime of violence, and the first is the text and structure, and that would be that the 4b1.2 is designed to do three things. It provides a definitional framework for interpreting what is a crime of violence. It also provides some crimes that are always crimes of violence and some crimes that are never crimes of violence, and I think from that we know that the Commission is not working through the definitional framework to determine that those crimes are never within the residual clause. They're merely providing an alternative route to conclude that some crimes either always are or always are not crimes of violence. The second thing I would point you to is the history and how the guideline was determined. In fact, the numerated crimes in the residual or in the commentary predated the residual clause, so the Commission amended what was in the text of the guideline and left the numerated list, and I think that if it were, in fact, interpreting the residual clause, that would be somewhat of an unusual way for them to do so, and the third thing I would say is that the court in route did not say that conspiracy and other inchoate crimes are within the definition of a crime of violence because it's within the residual clause. They said it stands alone and it is authoritative outside of the meaning of the text of the guideline itself, so I think that, you know, as I mentioned, that that is pending before the court in another case, but certainly has not been decided, so we are arguing it here and also arguing that robbery in Minnesota is within the generic definition of robbery. Robbery is an enumerated crime and will continue to be an enumerated crime after the guidelines are amended in onus. So shouldn't we wait until we hear what the court says on this? Certainly, if you would like to go that route, that would be reasonable for the court to do, but I think that it is very clear that this case can be decided and should be decided on the elements clause question because I think it's very clear that noted in the brief could also resolve this case on the issue of harmless error. I think we have a very strong case here that the district judge did not rely on the career offender enhancement in imposing the sentence he imposed here. He's in fact imposed the same sentence on this defendant twice, and so I think it would be fairly clear from the record that it would be unnecessary for the court to send it back a third time for him to impose the same sentence a third time based on the factors in 3553A. If there are no further questions, we would ask that you affirm. All right, thank you. Thank you. Anything further, Mr. Ruth? Yes, thank you, Your Honor. Three things I'd like to point out. First of all, to maybe stick up for myself a little bit with my example of the sneezing and the illness. Well, to begin with, you see, you'd get laughed out of court if you brought such a judge. Well, just wait though. Just wait, Judge. Minnesota says that fifth degree assault is a lesser included of simple robbery, and the Minnesota legislature says that causing illness is fifth degree assault. You have a case to support that? That's the statute. The statute says... Has anybody ever applied the statute to a real factual situation? Not to my knowledge. No, nor will they, but go ahead. You're going to start. If you talk long enough, you're making me sick, so be careful. Okay, well, I'm going to go to my other points. My other two points are that here's where we have to be careful. The government has done a very good job of showing us a lot of different Minnesota cases and has pointed out that, look, there's no Minnesota case that talks about psychological force. Well, so what? It hasn't come up. They left it open. They haven't said psychological force doesn't count, that psychological force is insufficient for simple robbery. And so the fact that that hasn't come up yet doesn't really matter. The legislature left it open when they said any force, not just physical force. And also this business of Rupp and Rollins was not raised in our brief, but I did file a Rule 28 letter pointing it out. The law right now is against me. And we went the route of saying that it doesn't fit the generic offense. If the law turns for us, we'd like to be a part of that. And that's why I filed my Rule 28. Understood. That's fine. Okay, thank you. All right, thank you. And you took this case by appointment, did you not, Mr. Briggs? We appreciate your help very much, and so does your client. I don't think I don't appreciate it, except it seems to me that you weren't taking it as serious as I was. I take it dead serious, Your Honor, dead serious. All right, thanks as well to the government. We'll take the case under advisement, and the court will be in recess. Thank you.